UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JEFFREY FARGO, KENNETH LANZILLI, PAUL SMITH, DENNIS McDONALD, MICHAEL MALERBA, STEVEN RANDAZZO, STEVEN CIAMPOLI, and JOHN BAVUSO
Plaintiffs

v.

CITY OF MEDFORD
Defendant

## COMPLAINT AND JURY DEMAND

### PARTIES

1. Plaintiffs Jeffrey Fargo, Kenneth Lanzilli, Paul Smith, Dennis McDonald, Michael Malerba, Steve Randazzo, Steven Ciampoli, and John Bavuso reside in Middlesex County, Commonwealth of Massachusetts.

2. Defendant City of Medford ("Medford") is an independent body politic established under the laws of the Commonwealth of Massachusetts, located in Medford, Middlesex County, Commonwealth of Massachusetts.

### FACTUAL ALLEGATIONS

3. At all times relevant hereto, Plaintiffs have been or were employed by Medford as Inspectors and Code Enforcement Officers in the Medford Building Department.

4. Plaintiffs' primary duties as Inspectors/Code Enforcement Officers call for them to enforce established codes and regulation, e.g., the Massachusetts State Building Code (780 CMR), the Massachusetts Architectural Access Board Regulations (521 CMR) and Medford Zoning Ordinances, by reviewing permit applications to determine if the applications meet the published

1

and preestablished conditions necessary for permit issuance and by making field inspections of projects and buildings to determine if they are in compliance with the published and preestablished codes and regulations.

5. Illustrative of the primary duties Plaintiffs perform in their jobs are those set forth in a position description Medford recently published for the job of "[Building Inspector/Sealer Weights and Measures](#)" (Ex. 1.), including the following:

6. Inspecting buildings in the process of construction, alteration, or repair to ensure compliance with building code requirements and for the applications of safe construction practices;

7. Reviewing plans and specifications for building construction and remodeling work;

8. Issuing permits for approved applications;

9. Preparing reports and keep records regarding inspections;

10. Inspecting places of assembly and other designated occupancies for compliance with codes and regulations;

11. Inspecting commercial weighing and measuring devices designed as "legal for trade";

12. Investigating building and zoning complaints;

13. Performing routine price verification in retail establishments having computerized scanning devices;

14. Collecting appropriate fees due the City and deposits receipt with the City Treasurer;

    15. Serving as consumer advocate by investigating any concerns or complaints to questionable selling practices;

    16. Assisting in the preparation of applications for variances, special permits, and division of land.

  17. Medford's position description for this job calls for an applicant to be a "[h]igh school graduate" or to have "any equivalent combination of experience and training." *Id*.

  18. On June 15, 2021, Medford's Mayor, Breanna Lungo-Koehn, executed a collective bargaining between Plaintiffs' union representative, Teamsters Local 25 ("Local 25") and Medford ("the CBA"). A copy of the CBA is attached here as Exhibit 2.

  19. Before the CBA was reached, Plaintiffs were not unionized, and the terms of their employment were not established by collective bargaining, but individual employment contracts, subject to Medford's personnel policies and state and federal laws.

  20. Both before and after Plaintiffs unionized, Medford has scheduled Plaintiffs' regular hours of work as:

    21. 8:30 a.m. to 4:30 p.m. on Mondays, Tuesdays, and Thursdays;

    22. 8:30 a.m. to 7:30 p.m. on Wednesdays; and

    23. 8:30 to 12:30 p.m. on Fridays.

  24. Although this work schedule comprises 39 hours, Medford has considered Plaintiffs' compensable time worked on this schedule to comprise only 35 hours, based on its automatic deduction of one hour for meal breaks from Plaintiffs' workdays on Mondays, Tuesdays, Wednesdays, and Thursdays.

  25. Before and after the CBA was agreed to, however, Plaintiffs have never been totally relieved of all work-related duties during their workdays.

26. Rather, throughout their workdays, and before and after their shifts begin or end, and with the knowledge of agents of Medford, Plaintiffs perform work related to their jobs, including by returning or receiving phone calls; returning and receiving electronic communications; performing inspections in the field; reviewing permits, and handling and other job-related paperwork.

27. Under the CBA reached in June 2021, Plaintiffs became eligible to receive overtime pay for hours they work in excess of 35 hours in their workweeks.

28. Prior to June 2021, however, Medford, by its agents, knew that Plaintiffs performed compensable work related to their jobs in excess of their agreed upon 35 hour workweeks, but did not pay them straight time cash wages or overtime cash wages for this work.

29. Rather, to compensate Plaintiffs for working beyond their agreed upon 35 workweeks, Medford occasionally compensated Plaintiffs with "compensatory time off" (hereinafter "compensatory time), on a straight time basis.

30. Medford has never had in place a lawful agreement with Plaintiffs or Local 25 permitting it to compensate Plaintiffs with compensatory time off in lieu of cash wages for their work.

31. In the CBA now in place between Plaintiffs and Local 25, in addition to their regular hourly wages, Medford has agreed to pay Plaintiffs a number of different wage augments, including:

    32. an annual sick leave buyback incentive (Article 23, Section 7);

    33. a stipend for having earned OSHA 10 and OSHA 30 certifications (Article 24, Section 6);

    34. longevity pay (Article 29);

4

35. a clothing allowance (Article 31);

36. numerous stipends for having attained different licenses and certifications (Article 34, Miscellaneous, Section 4);

37. and an innovation incentive payment (Article 35).

38. Under the CBA now in place, Medford has agreed to pay Plaintiffs at a "rate of time and one-half the normal hourly rate for all hours worked over thirty five (35) in a normal work week." (Article 12, 1.B.)

39. On or after three years prior to the commencement of this action, all of the Plaintiffs in this action have actually performed compensable time worked within the meaning of Massachusetts and federal law in excess of the agreed upon 35 hour workweeks, including weeks in which they actually performed work in excess of 40 hours.

## COUNT I
## Failure to Pay FLSA Overtime Due to Misclassification Prior to the Collective Bargaining Agreement Being Executed in June 2021

40. Plaintiffs repeat and incorporate by reference all allegations made herein.

41. Section 207(a) of the Fair Labor Standards Act ("the FLSA") requires a covered employee to pay a covered employee 1.5 times the employee's regular rate of par for all hours the employee works in excess of 40 in the employee's normally recurring seven-day work workweeks. Hereinafter, this will be referred to as "FLSA Overtime".

42. At all times relevant hereto, including before and after Local 25 and Medford both executed the CBA in June 2021, Medford has been obligated to pay Plaintiff's FLSA Overtime.

43. Indeed, under the FLSA, the only employees who can be lawfully classified as "exempt" from FLSA Overtime are those whom an employer can prove actually perform work, as a "primary duty", which falls within the narrow range of work that the FLSA defines as exempt from its overtime mandate. 29 C.F.R. § 541.700.

44.     The FLSA defines "primary duty" to mean the "principal, main, major or most important duty the employee performs." *Id*.

45.     An express provision of the FLSA's Regulations commands that employees whose primary duty is to perform the inspection and code enforcement activities Plaintiffs perform for Medford are not exempt from FLSA overtime:

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits. 29 C.F.R. § 541.203(g).

46.     According to the Department of Labor's Field Operations Handbook ("FOH"), by this activity, inspectors and code enforcement officers don't meet the required standard for exempt work, which requires as a primary duty the "exercise [of] discretion or independent judgment with respect to matters of significance to the management or general business operations that is necessary to qualify as exempt administrative employees." FOH, § 22j, Examples in Specific Occupations, 22j21.

47.     Here, at all times relevant to this action, as confirmed by the activities Medford has used to describe Plaintiffs' work in the position description attached hereto, summarized in paragraphs 6-16 above, Plaintiffs' principal, main, and most important job duty has indisputably consisted of their performance of the non-exempt activities described in the quoted Regulation, namely, reviewing permits and inspecting projects and buildings to make sure they comply with preestablished standards, previously published. (Ex. 1.)

48.     At all times relevant hereto, therefore, the FLSA has required Medford to pay Plaintiffs FLSA Overtime.

6

49. In violation of the FLSA therefore, prior to the time the CBA became effective, Medford violated the FLSA, because it did not pay them FLSA Overtime.

50. By its violation of the FLSA, Medford has caused Plaintiffs to suffer harm, injury, and damages.

51. Plaintiffs have filed FLSA Consent Forms in this action in accordance with 29 U.S.C. § 216(b). (Ex. 3.)

## COUNT II
## Unpaid FLSA Overtime Due to Regular Rate Violation

52. Plaintiffs repeat and incorporate by reference all allegations made herein.

53. At all times relevant to this action, including after the collective bargaining agreement was reached in June 2021, Medford has been obligated to pay Plaintiffs FLSA Overtime.

54. The overtime requirement of the FLSA requires an employer to pay covered employees overtime pay at 1.5 times their "regular rate of pay" for all hours they work in excess of 40 hours worked in their regularly recurring seven-day workweeks. 29 U.S.C. § 207(a)(1). Hereinafter, this will be referred to as "FLSA Overtime."

55. Under the FLSA, the "regular rate" upon which FLSA Overtime must be based is an hourly rate of pay that is calculated by dividing an employee's total earnings in his normally recurring seven-day workweek by the number of hours the employee actually worked in the workweek.

56. With certain exceptions not applicable here, total earnings for the regular rate calculation include not just straight time earnings, but "all remuneration for employment paid to, or on behalf of, the employee . . .." 29 U.S.C. § 207(e).

7

57. The collective bargaining agreement covering Plaintiffs has required Medford to pay Plaintiffs forms of remuneration, in addition to their regular wages, which the FLSA has required Defendant Medford to include in its regular rate calculations when calculating FLSA Overtime due Plaintiffs and similarly situated employees under the FLSA, including the wage augments set forth in the paragraphs 32-37 above.

58. By its failure to include these forms of remuneration in calculating FLSA Overtime due Plaintiffs, Defendant Medford has underpaid Plaintiffs wages due and owing them, thereby violating the FLSA, and causing Plaintiffs to suffer harm, injury, and damages.

## COUNT III
### Failure to Pay Overtime for "Off the Clock Work"

59. Plaintiffs repeat and incorporate by reference all allegations made herein.

60. The FLSA requires a covered employer to pay its employees 1.5 times their regular rate of pay for all "hours worked" in excess of 40 in their regularly recurring seven-day workweeks.

61. Under the FLSA, "hours worked" includes all time the employee suffers work or is permitted to suffer work. 29 C.F.R. § 553.221.

62. Compensable hours worked under the FLSA include all time during which an employee is required to be on duty, and any time worked before or after the end of the normal shift to complete the work. 29 C.F.R. § 553.221(b).

63. Work performed but not counted toward FLSA hours worked is commonly referred to as "off-the-clock work," and will be referred to as such herein.

64. At times relevant hereto, Plaintiffs have been scheduled for workweeks comprising a total of 39 hours, but due to Medford's automatic deduction of one hour of work from Plaintiffs' workdays for meal breaks Monday to Thursday, Medford has only counted 35 hours of Plaintiffs' scheduled hours as compensable.

65. Medford's automatic deduction of this time, however, is illegal under the FLSA, which only permits deductions for meal breaks when an employer can prove that it has "completely relieved [the employee] for the purposes of eating regular meals." 29 C.F.R. § 785.19. The Regulations command further that "[t]he employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *Id*.

66. Here, Medford never completely relieves Plaintiffs from their duties, but requires or permits them to suffer work throughout their supposed meal breaks, including by requiring or permitting them, at all times throughout their workdays to return or receive work-related phone calls or other electronic communications, and to perform inspections or handle paperwork.

67. Furthermore, Medford also requires Plaintiffs to perform these same activities before and after their scheduled shifts, but as in the case of the work Plaintiffs perform during their supposed meal breaks, Medford has not and does not count this work as compensable.

68. Medford, by its agents, has known that Plaintiffs have performed the off-the-clock work described above, including because Medford's agents have observed Plaintiffs performing it; have ordered them to perform it; and on many occasions, have participated with Plaintiffs in performing it, including by requiring Plaintiffs to communicate and collaborate with them about work-related projects throughout their workdays, and after their scheduled shifts.

69. Plaintiffs' off-the-clock work has benefited Medford, and Medford has accepted the benefit of this work, without counting it as compensable, or paying Plaintiffs wages for performing it, at either Plaintiffs' straight time or overtime rates of pay.

70. Pursuant to 29 U.S.C. § 207(a), Medford has been obligated to pay Plaintiffs 1.5 times their regular rate of pay for all hours they worked in excess of 40 in their regularly recurring seven-day workweeks.

71. Medford has violated 29 U.S.C. § 207(a) because it has failed to pay Plaintiffs overtime wages due them under the law, including because it did not include the off-the-clock work described here that Plaintiffs have performed in their regularly recurring seven-day workweeks, thereby depriving Plaintiffs of overtime wages they have been due under the Fair Labor Standards Act.

72. Significantly, Medford is not entitled to any offset of its damages for violating the FLSA by its use of "compensatory time off" in lieu of the payment of cash overtime wages to Plaintiffs in consideration of their work, as § 207(o)(2)(A) of the FLSA prohibits public employers like Medford from the use of compensatory time absent an "agreement or understanding" that meets the explicit standards set forth in 29 C.F.R. § 553.23(c), and which provides compensatory time off at rate "not less than one and one-half for each hour of employment for which overtime compensation is required . . .." 29 U.S.C. § 29(o)(1).

73. Medford has never had an agreement in place with Plaintiffs that meets the requirements of 29 C.F.R. § 553.23(c), and in further violation of the law, only gave Plaintiffs "straight time" credit for their compensatory time.

74. Plaintiffs have been harmed, injured and damaged by Medford's illegal acts.

## COUNT IV
### Failure to Pay Overtime Wages Required by G.L. c. 149, § 33B

75. Plaintiffs repeat and incorporate by reference all allegations made herein.

76. At all times relevant hereto, G.L. c. 149, § 33B has obligated Medford to pay Plaintiffs overtime wages for any authorized work Plaintiffs might have performed in excess of eight hours in one of their workdays, or 40 hours in their workweeks.

77. Medford assumed the statutory obligations imposed by G.L. c. 149, § 33B by accepting it on October 3, 1959.

10

78. As set forth above, throughout their employment, Plaintiffs have performed authorized work in excess of eight hours on their workdays and 40 hours in their weeks.

79. Indeed, at all times relevant hereto, on Wednesdays, Plaintiffs have worked the 11 hours for which Medford has scheduled their work, but in violation of G.L. c. 149, § 33B, Medford has never paid them the three hours of overtime it is obligated to pay them for this work.

80. In further violation of G.L. c. 149, § 33B, and most significantly before the CBA was put in place in June 2021, Defendant has not paid Plaintiffs overtime wages for the authorized work they performed in excess of eight hours in their workdays and 40 hours in their workweeks.

81. Medford's violation of the G.L. c. 149, § 33B has caused Plaintiffs to suffer harm, injury and damages.

## COUNT V
### Violation of the Massachusetts Wage Act, G.L. c. 149, § 148
### Failure to Make Timely Payment of Earned Wages

82. Plaintiffs repeat and incorporate by reference all allegations made herein.

83. The Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act") covers Medford's employment of Plaintiffs.

84. The Wage Act requires a covered employer to make timely payment of all earned wages to its employees.

85. A wage is earned under the Wage Act where the employee has completed the labor, service, or performance required of him. *Calixto v. Coughlin*, 481 Mass. 157, 160 (2018), *citing Awuah v. Coverall N. Am. Inc*, 460 Mass. 484 (2011).

86. Correspondingly, the Wage Act's requirement of timely payment is secured by virtue of the work or service actually performed. *Calixto*, 481 Mass. at 161, *citing Mass. State Police Commissioned Officers Ass'n v. Commonwealth*, 462 Mass. 219, 226 (2012).

87. Here, at times relevant hereto, both before and after the collective bargaining agreement was reached in June 2021, Medford has not paid Plaintiffs for all work they have performed in their workweeks.

88. Medford has not paid Plaintiffs for all the work they performed in their workweeks because it has uniformly considered their workweeks to comprise 35 hours of compensable work, and only paid them for those 35 hours.

89. As a matter of law, however, and as set forth above, Plaintiffs have throughout this period performed compensable time worked throughout the one hour meal breaks Medford has automatically deducted from their wages on Mondays, Tuesdays, Wednesdays, and Thursdays, and other compensable work before and after their scheduled shifts.

90. With respect to Medford's automatic meal break deductions, under the Regulations promulgated by the Massachusetts Division of Occupational Safety for the Wage Act, "working time" is defined to include "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site, and any time worked before or beyond the end of the normal shift to complete the work." *Taggart v. Town of Wakefield*, 78 Mass. App. Ct. 421, 423-424, *quoting* 455 C.M.R. § 27.02.

91. Like any other Massachusetts regulation, this regulation must be given the weight of controlling law. *DeVito et al. v. Longwood Security Services*, 34 Mass.L.Rptr. 65 (2016), *citing O'Hara v. Menino*, 253 F.Supp.2d 147, 153 (2003).

92. Accordingly, any time an employee covered by the Wage Act is not totally relieved of duty must be considered compensable time worked, and cannot be subject to a deduction for a meal break or other reason. *Id*; *see also Devito et al. v. Longwood Security Services, supra.*

93. As Massachusetts law applies here, therefore, because Medford can't prove that it has fully relieved Plaintiffs of all their duties as for the one hour it has automatically deducted from

12

their workdays for meal breaks, but instead, indisputably requires or permits them to suffer work throughout this period, or never fully relieves from work during this period, it has violated the Wage Act, because it has not paid Plaintiffs their earned wages for all compensable time worked during their alleged meal breaks, let alone within the time required by the Wage Act.

94. Significantly, Plaintiffs' status as union members after June 2021 does not bar their enforcement of rights under the Wage Act. Plaintiffs' right to prompt payment of wages earned is an independent statutory right that can be enforced even if a collective bargaining agreement addresses the subject matter compensation, which cannot be waived by collective bargaining. *Parris v. Sheriff of Suffolk County,* 93 Mass. App. Ct. 864, 871-872 (2018); G.L. c. 149, § 148; G.L. c. 150E, § § 4, 6.

95. Medford's violation of the Wage Act has caused Plaintiffs to suffer harm, injury and damages.

96. Plaintiffs have satisfied all prerequisites to suit under G.L. c. 149, § 148. (Ex. 4.)

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follow:

A. Judgment awarding Plaintiffs and all similarly situated employees all unpaid overtime compensation, liquidated damages, attorney's fees and costs as mandated under the FLSA, 29 U.S.C. § 216(b);

B. Judgment awarding Plaintiffs and all similarly situated employees all unpaid wages, treble damages, attorney's fees, and costs as mandated by G.L. c. 149, § 33B; G.L. c. 149, § 148 and § 150;

13

C. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

D. All such other and further relief to which Plaintiffs may show themselves to be justly entitled.

    Respectfully submitted,

    PLAINTIFFS

    By their Attorney:

    s/Daniel W. Rice
    Daniel W. Rice, BBO # 559269
    HARRINGTON, RICE & MAGLIONE, LLC
    738 Main Street
    Hingham, Massachusetts 02043
    (781) 964-8377
    dwr@harringtonrice.com

Dated: October 14, 2022